MARION J. McVEIGH, Respondent, v. NEW YORK LIFE INSURANCE COMPANY, Appellant.

Third Department, June 27, 1930.

*Rosendale, Dugan & Haines* [*P. C. Dugan* of counsel], for the appellant.

*John B. Smith*, for the respondent.

PER CURIAM. The plaintiff has received a verdict in an action brought by her as beneficiary upon two insurance policies issued by the defendant on the life of her husband, Luke M. McVeigh. The sole issue in the case is whether the insured's death was accidental or suicidal. The insured lived with his wife and baby in an apartment house on the north side of Turner place, Brooklyn. He was twenty-six years of age, had enjoyed a happy family life, had good employment and prospects and had been strong and athletic; but for a short time prior to his death had complained of being tired. He left his work at noon on Friday, November 9, 1928, because he was not feeling well. The plaintiff obtained permission for him to stay home Saturday and called their physician, who did not arrive, however, until Sunday evening, November eleventh. In the meantime she had obtained further permission from his superior for him to remain home two or three days longer and, if necessary, to take a week to rest. Dr. Townsend, who saw the insured Sunday evening, testified that he found the insured suffering from nervousness, general depression and inability to sleep and that the insured told him he was all tired out and could not go on. A friend called that evening who tendered his car to the insured to take his family on a ride the next day. It was arranged that they would go. About nine-thirty the next morning, November twelfth, he started out to get the car but in a few minutes returned. The plaintiff says that he returned to get money for carfare and to tip the garageman. Before leaving again she says he spoke of going up on the roof to fix a clothesline for her and she last saw him leaving the apartment with his overcoat on his arm. About ten o'clock his dead body was found on the south side of the roadway of Turner place, opposite and about thirty feet from the apartment house. His head was about that distance from the base of the apartment house, but his feet were directed toward the apartment house and were correspondingly nearer. His skull and chest and right pelvis were crushed and blood flowed from his head marking a spot on the pavement a few feet from the opposite or southerly curb. Investigation disclosed that he had gone to the roof of the apartment house, which was sixty-eight feet high, threw his hat and coat on the roof about opposite the spot on the pavement where his body was found, and that from

the roof he went to his death. The theory of the plaintiff was that he lost his balance and fell accidentally while attempting to change the clothesline. The fall or jump was unwitnessed. There are no circumstances disclosed from which it may be inferred that he actually did anything in reference to a clothesline. There was a parapet wall across the front rising thirty-eight inches above the roof in the lowest part of the wall; and directly opposite the spot on the pavement where the body was found there was a taller projection in the parapet wall, rising to four feet, nine and one-half inches above the roof, covered with a concrete slab. It is the contention of the appellant that the deceased committed suicide by jumping from this projection to his death. There is some proof that heel prints were found on top of this projection and also that the plaintiff had made some admissions indicating a suicidal tendency. The credibility of this testimony was an issue to be passed upon by the jury. The weight of the testimony shows, however, that he must have left the roof at a point at or near this projection and from the proofs presented it cannot fairly be inferred that he fell accidentally from the roof, because they fail to make explanation of how the body, merely falling from a roof sixty-eight feet high, could have been located on the opposite side of the street with the head about thirty feet from the base of the building. We think that this verdict, which held that the deceased met his death by accidental means and not with suicidal intent, is against the weight of the evidence and that the judgment and order should be reversed on the facts and a new trial granted. (*Lindblom* v. *Metropolitan Life Ins. Co.*, 210 App. Div. 177.)

VAN KIRK, P. J., HINMAN, DAVIS and WHITMYER, JJ., concur; HASBROUCK, J., dissents with a memorandum.

HASBROUCK, J. (dissenting). There is the presumption against self-destruction. There is evidence that insured went to the roof of the apartment house beside which he was found dead for the purpose of fixing the clothesline, and that he was killed by a fall from the coping while in such attempt, and of other facts from which an inference might be drawn that his fall was the result of accident and not design.

There are numerous facts from which the inference might be drawn that deceased committed suicide. Which inference was the more persuasive it was for the jury to say. It was for it " to go through with that process." (*Hart* v. *Hudson River Bridge Co.*, 80 N. Y. 622.) I vote to affirm.

Judgment and order reversed on the facts and new trial granted, with costs to the appellant to abide the event.